[Cite as *State v. Senu-Oke*, 2021-Ohio-2699.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29045 |
| | : | |
| v. | : | Trial Court Case No. 2020-EX-70101 |
| | : | |
| EDWA D SENU-OKE | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 6th day of August, 2021.

. . . . . . . . . . .

ASHTON J. HOOD, Atty. Reg. No. 0099925, and CHRISTINE L. STAAB, Atty. Reg. No. 0087939, Assistant Attorney General, State of Ohio Department of Taxation, Collections Enforcement Section, 30 East Broad Street, 14th Floor, Columbus, Ohio 43215
  Attorneys for Plaintiff-Appellee

EDWA D SENU-OKE, 400 Bracey Way, Chesapeake, Virginia 23323
  Defendant-Appellant, Pro Se

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Edwa D. Senu-Oke, judgment debtor, appeals pro se from an order of the trial court which reversed a magistrate's decision to stay a garnishment and which released funds to the State of Ohio Department of Taxation (the "State"). We affirm the judgment of the trial court.

{¶ 2} On July 24, 2020, the State filed a motion for an order of garnishment; the trial court issued a notice to Senu-Oke on the same day. The notice informed Senu-Oke that the court had issued an order in favor of the State directing that some of Senu-Oke's assets that were in the possession of the garnishee be used to satisfy his debt to the State, which was based on the State's judgment against Senu-Oke in Montgomery C.P. No. 2016SCJ123808. The notice included a "request for hearing" form, which informed Senu-Oke that, if he requested a hearing, the hearing would "be limited to a consideration of the amount of your money, property, or credits, other than personal earnings, in the possession or control of the indicated garnishee, if any, that can be used to satisfy all or part of the judgment" owed to the State, and that "[n]o objections to the judgment itself will be heard or considered at that hearing."

{¶ 3} On August 11, 2020, Senu-Oke filed the request for hearing form. The form did not list any reasons why Senu-Oke disputed the State's right to garnishment. As stated above, it contained the admonition that no objections to the judgment itself would be heard or considered at that hearing.

{¶ 4} A brief garnishment hearing was held on September 15, 2020. At the hearing, Senu-Oke testified that he was employed as a physician and that the State was apparently "garnishing [his] money" for taxes owed to the State "for a year that [he] never worked here or lived here." According to Senu-Oke, he had informed the State multiple

times "through letters" that he never lived or worked in Ohio in 2006, the year in question. Senu-Oke also stated that he received notice by the mail "that they were going to pass the judgment on me or had already passed the judgment on me," but he "never had an opportunity to dispute it or show them [his] proof," even though he had sent his "proof." Senu-Oke stated that, in his correspondence to the State, he had informed it that he had lived in a different state and had paid taxes to that state, and even sent a copy of the check he wrote to that state (Delaware). He stated that he "also brought every single billing * * * for that year," and indicated that he had "billed only in the State of Delaware because that's where I lived and worked." Senu-Oke stated that the last time he lived in Ohio was when he was in medical school in 2002. The magistrate indicated that she "would like to get copies" of these documents so she could look at them and try to sort the matter out. The magistrate instructed Senu-Oke to proceed to another room to make copies of his original evidence for her to review. In response to a question from Senu-Oke, the magistrate told Senu-Oke that it was up to him to decide which documents to submit to establish that he was not a resident of the State and was not working in Ohio in 2006, and Senu-Oke indicated his understanding.

{¶ 5} On September 18, 2020, the magistrate issued a decision stating that Senu-Oke had "introduced documents to establish he was not working in Ohio during the time frame the State of Ohio claims he owes taxes." The magistrate stayed the garnishment, ordered the clerk of courts to hold the funds until further order of the court, and gave the State 14 days to submit documents that established the basis for the taxes owed.

{¶ 6} The State filed objections on October 2, 2020. The State asserted that the documentation that Senu-Oke introduced at the hearing effectively sought to invalidate

the prior judgment by showing that he was working outside of Ohio during the assessment period. The State argued in its objections that the prior judgment was valid, Senu-Oke's due process rights had been met, and the court of common pleas lacked jurisdiction to stay the execution of the pending action.

{¶ 7} Specifically, the State asserted that certified service of the notice of assessment had been delivered and signed on May 14, 2008, pursuant to R.C. 5703.37, "along with instructions on how to petition for reassessment and request a hearing." Pursuant to R.C. 5747.13(B), an assessment becomes final unless the party assessed files a written petition for reassessment within 60 days after service of the notice of assessment. The State points out that Senu-Oke "petitioned for reassessment" on July 25, 2008, which was 72 days after the notice of assessment was delivered, and the Tax Commission dismissed the petition for reassessment as not timely filed. According to the State, Senu-Oke appealed to the Ohio Board of Tax appeals, pursuant to R.C. 5717.02, arguing that he was not an Ohio resident during the relevant time period, but "offered no evidence the tax [c]ommissioner's decision regarding service of assessment was incorrect." According to the State, the tax commissioner filed a motion to affirm or dismiss, arguing that "the Tax Commissioner was correct in dismissing the petition for reassessment because it was filed untimely or, in the alternative, [Senu-Oke's] notice of appeal failed to state with specificity the errors complained of." On April 26, 2011, the Board of Tax Appeals unanimously affirmed the tax commissioner's decision dismissing the appeal as untimely filed. (The Board of Tax Appeals' decision and order was attached to the State's objections.) The State further asserted that, pursuant to R.C. 5717.04, decisions of the Board of Tax Appeals "may be appealed directly to the Ohio

Supreme Court as of right, to the Court of Appeals where the taxpayer resides, or to the Franklin County Court of Appeals (in specified circumstances)."

{¶ 8} The State also directed the court's attention to R.C. 5747.13(C), which provides:

> After an assessment becomes final, if any portion of the assessment remains unpaid, including accrued interest, a certified copy of the tax commissioner's entry making the assessment final may be filed in the office of the clerk of the court of common pleas in the county in which the employer's, taxpayer's, or qualifying entity's place of business is located or the county in which the party assessed resides. If the party assessed is not a resident of this state, the certified copy of the entry may be filed in the office of the clerk of the court of common pleas of Franklin county.
>
> Immediately upon the filing of the entry, the clerk shall enter a judgment against the party assessed in the amount shown on the entry. * * * The judgment shall have the same effect as other judgments. Execution shall issue upon the judgment upon the request of the tax commissioner, and all laws applicable to sales on execution shall apply to sales made under the judgment.

{¶ 9} According to the State, R.C. 5747.13 "thus empowers the Tax Commissioner to issue assessments for taxes due. The taxpayer is required to be served written notice of the assessment and is provided multiple levels of appeal, being permitted to appeal to the Tax Commissioner, the Board of Tax Appeals, the Court of Appeals and the Ohio Supreme Court." The State asserted that assessments "which become final are certified

to the clerk of the court of common pleas, and the clerk then records a judgment against the party assessed for the amount shown due. The State asserted that it had complied with the provisions of R.C. 5747.13, and Senu-Oke had been afforded due process to contest this assessment.

{¶ 10} Because the statutory process had been followed, the State asserted in its objections that the magistrate did not have the authority to vacate an order of the Ohio Department of Taxation. The State directed the court's attention to R.C. 5703.38, which provides: "No injunction shall issue suspending or staying any order, determination, or direction of the department of taxation, or any action of the treasurer of state or attorney general required by law to be taken in pursuance of any such order, determination, or direction. This section does not affect any right or defense in any action to collect any tax or penalty."

{¶ 11} The State further directed the court's attention to *Hakim v. Kosydar*, 49 Ohio St.2d 161, 359 N.E.2d 1371 (1977). According to the State, the common pleas court "lacks jurisdiction to revisit the underlying judgment," and "execution on the garnishment must be permitted to move forward." Finally, the State asserted that Senu-Oke was not precluded from bringing his due process arguments in other proceedings; he was simply precluded from seeking the dismissal or vacation of the judgment lien "in the manner sought herein."

{¶ 12} A copy of the State's 2008 notice of assessment issued to Senu-Oke and a signed U.S. Postal Service receipt for the May 14, 2008 delivery of the notice were attached to the State's objections; the receipt bore the signature of Charlton Senu-Oke and a Honeybrook Avenue address in Dayton.

{¶ 13} Senu-Oke did not respond to the objections.

{¶ 14} On February 24, 2021, the trial court determined that Senu-Oke was "effectively seeking to invalidate or dismiss the underlying judgment lien through improper means," and that the court lacked jurisdiction to suspend or stay an order of the Department of Taxation." Thus, the State's the objections were sustained. The court stated:

> After review of the record, it appears to this Court that [Senu-Oke] has incorrectly attempted to attack the validity of the judgment lien itself, rather than utilize lack of notice as a defense to the collection action. The court notes that during the hearing held by [the magistrate] * * * [Senu-Oke] stated that he received notice many months later, and as a result, could not dispute the assessment despite having conveyed to the State of Ohio that he never lived or worked there. However, the possible assertion of such a notice defense is unclear from the record currently before this Court.
>
> While [Senu-Oke] cannot attack the validity of the judgment lien itself and have it vacated, he is free to raise the claim that he never received notice of the tax assessment as an affirmative defense to defend against the collection action. * * * *State v. Lomaz*, 146 Ohio App.3d 376, 379, 766 N.E.2d 209 (11th Dist.2001). "A trial court has jurisdiction to consider affirmative defenses raised in a motion during a collection proceeding. If such a defense is raised, the state's attempt at collection is not stayed, but proceeds to final judgment, and if the defense is good, judgment will be entered for the taxpayer." (Citation omitted). *Id.*

[Senu-Oke] is entitled to raise affirmative defenses to oppose action taken by [t]he State to collect on that judgment. *See Lomaz, supra.* However, as indicated above, the possible assertion of such an affirmative defense is unclear from the record currently before this Court. What is clear from the record is that [Senu-Oke] is attempting to vacate the judgment lien and stay the department from proceeding with collection.

\* \* \*

Based on the language in the Magistrate's Decision, it appears that the decision to stay the garnishment was not based on the affirmative defense of lack of notice, rather, it was based upon [Senu-Oke's] challenge to the validity of the underlying judgment lien. The record before this Court reveals that [Senu-Oke] seeks to have the tax judgment against him vacated just as the tax payer did in *Hakim.*

As such, this Court must conclude that the Magistrate's decision staying the garnishment and ordering the Clerk of Court to hold the funds held until further order is improper. R.C. 5747.13 requires a taxpayer to pursue a challenge with the tax commissioner. [Senu-Oke's] challenge of the underlying tax liens is impermissible and he is precluded from seeking dismissal of the judgment lien in such a manner.

{¶ 15} Thus, the court refused to adopt the magistrate's decision and ordered that the garnishment funds be released to the State.

{¶ 16} Senu-Oke asserts the following assignment of error on appeal:

THE JANUARY 27, 2021 DECISION OF THE [TRIAL COURT]

SHOULD BE REVERSED BECAUSE IT ERRONEOUSLY IGNORED THE AFFIRMATIVE DEFENSE OF INSUFFICIENT NOTICE RAISED BY APPELLANT AT THE SEPTEMBER 15, 2020 HEARING * * *.

{¶ 17} In his brief, Senu-Oke recounts the evidence that he presented at the garnishment hearing about not having lived at the service address and not having resided in Ohio since he was a medical student in 2002. He points out that the State's own records and the trial court's decision (in a footnote) acknowledge that he was served at an Ohio address and that service was signed for by a different person, not Senu-Oke. Senu-Oke argues that the trial court "ignored" his affirmative defense of insufficient notice, and that he had been "unable to raise an objection to the incorrect tax assessment within the time period specified under law precisely because of the State's own improper notice." Senu-Oke asserts that the trial court erred and encourages this court to "exercise jurisdiction" over the underlying tax dispute, direct the Board of Taxation to re-open the matter, and provide him with an opportunity to contest the validity of the tax assessment, noting that that R.C. 5717.04 provides that final determinations of a local board of tax review can be appealed to the supreme court or relevant court of appeals.

{¶ 18} The State responds that, in 2007, it received notice from the Internal Revenue Service of a federal tax filing made by Senu-Oke using the address at Honeybrook Avenue in Dayton, Ohio. Upon review, the State discovered that Senu-Oke had failed to file personal income taxes with the State of Ohio during the 2006 tax year. According to the State, R.C. 5747.13(C) "fully comports with all due process requirements" insofar as taxpayers are given notice of the assessment, including instructions on how to appeal such an assessment. According to the State, citing R.C.

5703.05, even if a taxpayer does not avail himself or herself of the administrative appeal process, the taxpayer can pay the tax assessed and then timely file an application for a refund, "which enables the taxpayer to be heard as to all challenges pertaining to the tax." The State asserts that "[d]ue process concerns involving State statutory tax schemes are treated differently than general due process requirements" and that Ohio's statutory process satisfies due process.

{¶ 19} The State asserts that Senu-Oke was not entitled to service of a notice of judgment, but he had notice that a judgment could be filed against him. The State directs our attention to R.C. 5703.51(C), which provides:

> With or before the issuance of an assessment, the tax commissioner or county auditor shall provide to the taxpayer:
>
> (1) A written description of the basis for the assessment and any penalty required to be imposed with the assessment;
>
> (2) A written description of the taxpayer's right to appeal the assessment and an explanation of the steps required to request administrative review by the tax commissioner;
>
> (3) A written description of the collection remedies available to the state, including a statement that if the taxpayer fails to pay an assessment within sixty days after it is due, the tax commissioner will certify the amount to the attorney general for collection, and a summary of the provisions contained in section 131.02 of the Revised Code.

{¶ 20} The State asserts that the notice issued to Senu-Oke informed him that his failure to act could result in the filing of a judgment, and that the assessment would

become final 60 days after receipt of the assessment and would be sent to the Attorney General's Collection Enforcement Section. According to the State, the Attorney General is required by R.C. 131.02(B) "to give immediate notice by mail or otherwise to the party indebted of the nature, amount and other information related to the debt, including that '[t]he attorney general shall collect the claim or secure a judgment and issue an execution for its collection. R.C. § 131.02(C).' " The State asserts that, while "no notice of judgment is required," taxpayers receive at least two written notices that a judgment may be taken on the outstanding debt: the initial notification of the assessment and appeal process and when the debt is certified to the Ohio Attorney General.

{¶ 21} The State asserts that the notices of assessment in this case were properly served prior to judgment. The State gave written notice of the assessment in the manner provided in R.C. 5703.37, including instructions on how to petition for reassessment and request a hearing on the petition. The State asserts that R.C. 5747.13(A) authorizes the tax commissioner to issue an assessment against any taxpayer who fails to file a return or fails to pay the income tax owed, and the taxpayer is given written notice via certified mail sent to the last known address of the taxpayer. According to the State, the certified service of the notice of the assessment was delivered to the same address used by Senu-Oke in his 2006 federal tax filing and signed for by Charlton Senu-Oke on May 14, 2008.

{¶ 22} The State asserts that Senu-Oke did not timely appeal the assessments with the tax commissioner, noting that Senu-Oke's appeal was filed 72 days after service was certified. Thus, his appeal was appropriately denied and a final order was issued by the tax commissioner. The State asserts that Senu-Oke's claim that he was not provided an opportunity to appeal the assessments prior to judgment "is simply not true."

The State notes that R.C. 5703.056(A) "requires the tax commissioner to use certified mail or personal service," and R.C. 5703.056(B)(4) authorizes the tax commissioner to use a delivery service for the delivery of any payment or document that records electronically to a database kept in the regular course of its business the date on which the payment or document was given by the delivery service to the person who signed the receipt of delivery and name of the person who signed by receipts." The State asserts that Exhibit B reflects that certified mail was delivered to Senu-Oke's presumed address in Dayton on May 14, 2008, signed by Charlton Senu-Oke.

{¶ 23} The State argues that R.C. 5747.24 governs Senu-Oke's claim that he was not an Ohio resident during the tax periods in question. R.C. 5747.24 provides:

(B)(1) Except as provided in division (B)(4) of this section, an individual is presumed to be not domiciled in this state for the entirety of any taxable year for which the individual files a statement with the tax commissioner under division (B)(2) of this section and meets all of the following requirements:

* * *

(c) The individual did not hold a valid Ohio driver's license or identification card at any time during the taxable year. An individual shall not be deemed to have held a valid Ohio driver's license or identification card for the purposes of this division if, before the beginning of the taxable year, the individual surrendered the license or card to the bureau of motor vehicles or to the motor vehicle licensing authority of a jurisdiction outside this state.

* * *

* * *

(2) On or before the fifteenth day of the tenth month following the close of the taxable year, an individual that meets the requirements prescribed by division (B)(1) of this section may file with the tax commissioner, on the form prescribed by the commissioner, a statement from the individual verifying that the individual meets such requirements.

{¶ 24} The State asserts that Exhibit C, attached to its brief, indicates that in October 2003, Senu-Oke renewed his driver's license using the same address that was used for notice of the assessment (the Honeybrook Avenue address), and that his driver's license did not expire until October 29, 2007. Thus, during the assessment year (2006), Senu-Oke still had a valid driver's license using that address, and he was presumed under Ohio law to be an Ohio resident pursuant to R.C. 5747.24. Furthermore, Senu-Oke specifically stated in his brief that he had no affiliation with the State of Ohio after 2002, but his renewal of his Ohio driver's license in 2003 "directly conflicts" with that assertion.

{¶ 25} We note that in *Lomaz*, 146 Ohio App.3d 376, 379, 766 N.E.2d 209, cited by the trial court, the Eleventh District quoted R.C. 2723.01, which states: "Courts of common pleas may enjoin the illegal levy or collection of taxes and assessments and entertain actions to recover them when collected, without regard to the amount thereof, but no recovery shall be had unless the action is brought within one year after the taxes or assessments are collected." The *Lomaz* court further quoted R.C. 5703.38, which states: "No injunction shall issue suspending or staying any order, determination, or direction of the department of taxation, or any action of the treasurer of state or attorney general required by law to be taken in pursuance of any such order, determination, or

direction. This section does not affect any right or defense in any action to collect any tax or penalty."

{¶ 26} The Eleventh District noted as follows:

> In construing these two provisions together, the Supreme Court of Ohio has held that "R.C. 5703.38 prohibits a Court of Common Pleas from entering an order which has the effect of suspending or staying an order, determination, or direction of the Department of Taxation." *Hakim v. Kosydar*, (1977), 49 Ohio St.2d 161, 3 O.O.3d 211, 359 N.E.2d 1371, syllabus. See, also, *Torbet v. Kilgore* (1966), 6 Ohio St.2d 42, 35 O.O.2d 48, 215 N.E.2d 579, paragraph one of the syllabus (holding that "Section 5703.38, Revised Code, prohibits an injunction that will suspend or stay any order, determination or decision of the Tax Commissioner").

> In *Hakim,* the taxpayer did not specifically request injunctive relief; rather, she asked the trial court to vacate a judgment lien that had followed a final sales tax assessment on the grounds of insufficient service of process. The Supreme Court rejected the taxpayer's argument, reasoning that although R.C. 5703.38 did not appear to prevent an action to vacate a tax judgment, if a court were to vacate such a judgment, the Attorney General could not maintain an action to collect upon the judgment or to enforce the judicial lien. *Hakim* at 164-165 * * *. Stated differently, *Hakim* stands for the "proposition that a court has no power to entertain a complaint to vacate a judgment rendered upon a tax assessment before collection proceedings are instituted, because judgment on that complaint would

amount to an injunction against future collection proceedings in violation of R.C. 5703.38." *Ohio Dept. of Taxation v. Plickert* (1998), 128 Ohio App.3d 445, 449, 715 N.E.2d 239.

The Supreme Court also observed that the effect of R.C. 5703.38 would not result in an absolute denial to courts of the right to determine the legality of a tax. *Hakim* at 165 * * *. Instead, a taxpayer who disputes the final determination of a tax commissioner may appeal that decision to a Board of Tax Appeals, and from there directly to the Supreme Court. *Id.* Furthermore, a taxpayer may pay the assessment, seek a certificate of abatement, and raise any due process arguments at that time. *Id.* More important for this case, "It should also be noted that [the taxpayer] can await the institution of collection proceedings * * * and therein raise as a defense her claim of insufficient service of the assessment." *Hakim* at 165 * * *.

In *Plickert,* we embraced the Supreme Court's holding and similarly concluded that R.C. 5703.38 prohibited a court of common pleas from entering any order that would amount to an injunction against *future* collection proceedings. *Plickert* at 449, 715 N.E.2d 239. However, this court also relied upon the Supreme Court's cautionary language when we held the following:

"This dictum recognizes the trial court's general jurisdiction to enter judgment upon an affirmative defense raised in the collection proceeding, which was left undisturbed. If such a defense is raised, the state's attempt at collection is not stayed, but proceeds to final judgment, and if the defense

is good, judgment will be entered for the taxpayer. While it is true that granting judgment for the debtor for defects in the service of process in this manner has the practical effect of precluding collection efforts, this is not accomplished by the court's equitable power of injunction. *Therefore, neither R.C. 5703.38 nor Hakim prohibits a court from considering this defense in the context of an action to collect upon a judgment for delinquent tax.*" (Emphasis added.) *Plickert* at 450, 715 N.E.2d 239. See, also, *State v. Marysville Steel, Inc.* (1997), 119 Ohio App.3d 785, 696 N.E.2d 298.

In light of the foregoing, we conclude that the trial court correctly overruled appellant's motion to vacate the judgment lien. Precedent from both the Supreme Court of Ohio and this court is very clear in holding that R.C. 5703.38 limits a court's power to enter an injunction or take similar action that would prevent the Attorney General from entertaining future collection proceedings.

Having said that, unlike *Hakim,* the present case was an action to *collect* a tax and is, therefore, not affected by R.C. 5703.38. Here, the state has attempted to collect on a valid judgment lien by garnishing appellant's personal property through attaching his bank accounts with Firstar. As a result, while appellant could not attack the validity of the judgment lien itself and have it vacated, he was free to raise the claim that he had never received notice of the tax assessment as an affirmative defense to defend against the collection action. *Plickert, supra.*

*Lomaz* at 378-379.

{¶ 27} As in *Lomaz*, the State herein attempted to collect on a lien valid by operation of law.   R.C. 5747.13(B) provides:

Unless the party assessed files with the tax commissioner within sixty days after service of the notice of assessment, either personally or by certified mail, a written petition for reassessment, signed by the party assessed or that party's authorized agent having knowledge of the facts, *the assessment becomes final, and the amount of the assessment is due and payable* from the party assessed to the commissioner with remittance made payable to the treasurer of state. * * *

(Emphasis added.)

{¶ 28} As noted above, the form by which Senu-Oke requested a hearing stated: "No objections to the judgment itself will be heard or considered at that hearing."   While Senu-Oke argues that he raised the affirmative defense of lack of notice of the assessment at the garnishment hearing, the magistrate apparently concluded that he was attempting to attack the validity of the lien.   The magistrate did not address any alleged lack of notice of the 2008 notice of assessment.   When asked if his documentation was "all about the taxes for 2006," Senu-Oke responded affirmatively.   The magistrate advised Senu-Oke to provide "whatever it is that you feel is indicative that * * * *you don't owe taxes here.*"   In her written decision, the magistrate noted that Senu-Oke introduced evidence establishing that he was not working in Ohio in 2006.   She further ordered the State "to provide an accounting to Judgment Debtor establishing the amount owed," an amount already established by the final lien.   The trial court found that Senu-Oke sought to have the tax judgment against him vacated."   We agree.   In sustaining the State's

objections, the trial court correctly concluded that the magistrate's decision staying the garnishment and ordering the clerk to hold the funds until further order was improper.

{¶ 29}  Senu-Oke's assignment of error is overruled.

{¶ 30}  The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Ashton J. Hood
Christine L. Staab
Edwa D Senu-Oke
Hon. Gerald Parker